### Harrington, et al. v. Layton, et al.

(Decided October 26, 1923.)

#### Appeal from Harrison Circuit Court.

1. Wills—Life Estate Only Given to Wife.—Clause in a will be-
queathing to testator's wife "all of my possessions, real and per-
sonal during her natural lifetime, and at her death to be divided"
as set forth in the will, held to create only a life estate in the
wife.

2. Wills—Provision Held to Create Only Life Estate in Stepson.—A
provision in a will, to my stepson, R., "I give and bequeath the
farm of 100 acres on the waters of Crooked creek, and of which
he now has possession, and at his death to his children," held
to give Robert merely a life estate with remainder to his children.

3. **Wills—Clause Held to Create Life Estate with Remainder to Children.**—A clause in a will, to J. "I give and bequeath the home farm on which I now reside and to his children," held to create only a life estate in J. with remainder to his children.

T. E. KING for appellants.

HANSON PETERSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

The following will made by Zedekiah Miller in 1866 is presented for construction:

"In the name of God, amen:

"I, Zedekiah Miller, weak and frail in body, but sound of mind and memory, do make and declare this my last will and testament in manner and form following:

"First: I give and bequeath unto my beloved wife all of my possessions, real and personal, during her natural lifetime, and at her death to be divided as follows, viz.: to my stepson, Robert Layton, I give and bequeath the farm of one hundred (100) acres on the waters of Crooked creek, and of which he has now the possession, and at his death to his children.

"Second: To my wife's granddaughter, Sarah Gatrel, and her children I give and bequeath the farm of 73½ acres on which they now live, and which was purchased of William D. Purdy, and one hundred ($100.00) dollars to be paid *them* by John Thomas Layton, to whom I give and bequeath the home farm on which I now reside, and to his children, and as to my personal property, I give and bequeath it all, after the payment of my just debts, to my beloved wife, during her lifetime and to be disposed of as she may desire after her death."

The testator died shortly after the execution of the will, and in 1877, 100 acres of the tract devised to John Thomas Layton were sold at a decretal sale, leaving but 28.90 acres of the boundary which the will set aside to him. That 28.90 acres are now the subject of this litigation.

Some time after John Thomas Layton came into possession of the 28.90 acres he sold it to one Dorosett and John P. Layton. On the 28th of November, 1882, John Thomas Layton, Dorosett and John P. Layton, joining their wives, conveyed the property to Albert N. Harrington and put Harrington in possession of it. Since that

time but long before the commencement of this action Harrington died intestate, in possession of the lands, leaving descendants of whom Foster Harrington, Edgar Harrington, Oney Harrington and W. E. Harrington became the sole claimants of the lands in question. In 1920 John Thomas Layton, mentioned in the will, departed this life, leaving the plaintiffs and appellees, J. P. Layton, James Emmons and William Gilvin, Joe Layton, George W. Layton, Mack Layton Siddles and Fannie Layton Miller, as his only heirs.

Claiming through the will of Miller to be the owners of the 28.90 acres of land in controversy the plaintiffs, now appellees, brought this action the 9th of February, 1920, averring that John Thomas Layton by the terms of the will took only a life estate, and that plaintiffs took the fee in remainder; that the defendants, the heirs of Harrington, were holding the lands against them, and prayed a recovery of the lands together with damages for the wrongful detention, and for the alleged value of the rentals. The case being submitted on its merits to the court for judgment, it was held that John Thomas Layton, father of part of the plaintiffs, and grandfather of the others, took only a life estate under the will of Zedekiah Miller in the tract of land described in the petition, containing 28.90 acres and therefore could not pass title by conveyance to his grantee, A. N. Harrington, and that the plaintiffs who took the remainder under the will were entitled to recover all the said lands except the one-sixth interest which John P. Layton took under the will and which he, by the deed of date November 28, 1882, joining with his father, John Thomas Layton, conveyed to Harrington. None of the children except John P. Layton joined their father in that deed, and therefore were not affected by it, as held by the lower court.

The first item in the will bequeathed to the wife of testator "all of my possessions, real and personal, during her natural lifetime, and at her death to be divided" as set forth in the will. He thus gave to his wife only a life estate in the real property. In the same paragraph of the will it was provided "to my stepson, Robert Layton, I give and bequeath the farm of 100 acres on the waters of Crooked creek, and of which he now has possession, *and at his death to his children.*" Clearly he gave to Robert Layton merely a life estate with remainder to his children.

# Harrington v. Layton.     633

The second item or paragraph of the will reads: "To my wife's granddaughter, Sarah Gatrel, and her children, I give and bequeath the farm of 73½ acres on which they now live, and which was purchased of William D. Purdy and one hundred ($100.00) to be paid *them* by John Thomas Layton, to whom I *give and bequeath the home farm on which I now reside, and to his children.*" John Thomas Layton was required to pay $100.00 to Sarah Gatrel and her children. The money was to be paid to "them." The home farm was given to John Thomas Layton "and to his children." The question is, did the testator use the word "children" in the sense of heirs, or did he intend to make the word "children" one of purchase? Undoubtedly the will was drawn by the testator himself, and we are convinced from a careful inspection of it all, including a codicil, which is not here involved, testator was not accustomed to drafting such papers and no doubt was entirely unfamiliar with the legal terms employed and the meaning thereof generally intended when employed by persons learned in the law in such writings. For instance, he uses the word "bequeath" in disposing of real property which indicates that he did not recognize the distinction between that word and the word "devise," which generally relates to real property. From the whole instrument it appears that he intended for his surviving wife to have a life estate only in the land and at her death to give it to his stepson and the grandchildren of his wife named in the will, then living, a life estate only with remainder to the children of such grandchildren. The clause with respect to John Thomas Layton may be read: "I give and bequeath to John Thomas Layton the home farm on which I now reside, and to his children." The giving is not to John Thomas Layton "forever," as it is generally expressed when it is intended to transmit a fee, but the devise is merely to John Thomas Layton, and to his children. There is no intimation at all in the paper that the testator intended to use the word "children" as synonymous with the word "heirs." We think that while the language is rather inapt the devise to John Thomas Layton was to be the same as that to the stepson, Robert Layton, to whom he gave 100 acres "and at his death to his children." Had he desired to give to John Thomas Layton the fee he would not have added the words "and to his children," because that would have been surplusage, but inasmuch as he intended to give the lands to John Thomas Layton during his lifetime only and then to his

children, he used the expression "and to his children" to express this desire. Regarding the clause as it is written: "John Thomas Layton, to whom I give and bequeath the home farm on which I now reside, and to his children," shows that he had in mind the giving of a limited estate in the property to John Thomas Layton, and after the cessation of that estate to his children. When the testamentary paper is read and examined from its four corners we are persuaded that it was the purpose of the testator to devise to his wife's grandson a life estate only in the home farm, with the remainder to the children of that grandchild. If we apply the strict rules of law governing the construction of such instruments we will arrive at the same conclusion. John Thomas Layton was the grandson of Mrs. Miller, wife of the testator, and was reared in the home of the testator. The testator was not related by blood to the devisee. In such case it is said that a devise by a father to a son or daughter or other blood relation in which the language "to him and his children forever" is used, the word "children" will generally be construed to mean "heirs," and under that construction they will take no interest whatever in the land but the entire title will vest in the first taker; but where the devise is to the blood relation, as a son or daughter, and his children, where the word "forever" is not used following the word "children," the children take a fee subject to the life estate of the parent. This second illustration, we think, fits the facts and circumstances in this case. These rules have been laid down in several cases in the following form:

"First: Devises by a father or mother to a son, daughter or blood relation, in which the language 'to him and his children forever' is used; second, devises to a blood relation to his children, where the word 'forever' is not used following the word 'children;' and third, devises by a husband to his wife and her children.

"In all those cases falling within the first class, the word 'children' has been construed as meaning 'heirs,' and under this construction it has been held that they took no interest in the property devised. In the second class of cases it has been held that the children took a fee, subject to the life estate of their parent. And in the third class of cases the children have been held to take the fee and the parent the life estate; the opinion in the cases falling within this class being rested, as stated, upon the idea that the testator, while wanting his wife to have the

full use, benefit and enjoyment of his property during her life, would not want it after her death, to pass to those strangers in blood to him.'' Nashville, et al. v. American Machine Co., 145 Ky. 344, and other cases there cited.

The word "forever" as shown above is not used after the word "children," or after the name of the devisee, John Thomas Layton, clearly indicating that the property was not given to him *forever,* but merely given to him during his lifetime, and then to his children.

John P. Layton having sold his one-sixth undivided interest in the property and conveyed it by the deed, to which we above referred, is not entitled to participate in the other five-sixths of the property which his co-appellees are adjudged to own, but appellants, Harringtons, took the one-sixth undivided interest of John P. Layton. The chancellor having arrived at this conclusion, and having entered a decree accordingly, the judgment is affirmed.

Judgment affirmed.